[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, Slip Opinion No. 2023-Ohio-3382.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3382

THE STATE EX REL. AMES, APPELLANT, *v.* PORTAGE COUNTY BOARD OF COMMISSIONERS, APPELLEE, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, Slip Opinion No. 2023-Ohio-3382.]

*Mandamus—Public Records Act—Open Meetings Act—Law-of-the-case doctrine—On remand, court of appeals correctly granted summary judgment on relator's Open Meetings Act claim but erred in its analysis of whether relator is entitled to statutory damages under the Public Records Act—Judgment affirmed in part and reversed in part and cause remanded.*

(No. 2022-0148—Submitted January 10, 2023—Decided September 26, 2023.)

APPEAL from the Court of Appeals for Portage County,

No. 2019-P-0125, 2022-Ohio-336.

_____

**KENNEDY, C.J.**

{¶ 1} In this appeal from a judgment of the Eleventh District Court of Appeals, we consider whether the court of appeals correctly decided that appellant, Brian Ames, is not entitled to relief under the Open Meetings Act, R.C. 121.22, or to an award of statutory damages under the Public Records Act, R.C. 149.43(C)(2).

{¶ 2} This is not the first time that this case has come before us. In *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492 ("*Ames I*"), we reversed the Eleventh District's judgment granting summary judgment in favor of appellee, the Portage County Board of Commissioners ("the board"), and the Portage County Solid Waste Management District Board of Commissioners ("SWMD") and the Portage County Court of Common Pleas. We remanded the case to the court of appeals with instructions that it determine whether Ames is entitled to relief under the Open Meetings Act and to an award of statutory damages under the Public Records Act. *Ames I* at ¶ 28. On remand, the court of appeals granted the board and the SWMD summary judgment on Ames's Open Meetings Act claim and denied Ames's request for an award of statutory damages.

{¶ 3} Though the court of appeals correctly granted summary judgment on Ames's Open Meeting Act claim, it erred in its analysis of the statutory-damages issue. We therefore affirm in part and reverse in part the judgment of the Eleventh District and remand this matter to the court of appeals to determine the amount of statutory damages, if any, to which Ames is entitled under R.C. 149.43(C)(2).

## I. Facts and Procedural History

### A. Board Meetings and SWMD Business

{¶ 4} The board established the SWMD in 1988, as authorized by R.C. 3734.52(A) and (B). Under R.C. 3734.52(A), the board also serves as the board of directors of the SWMD. *See Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgmt. Dist.*, 73 Ohio St.3d 590, 596, 653 N.E.2d 646 (1995).

**{¶ 5}** This case arose from Ames's challenge to the board's method of conducting SWMD's business in 2019. The board generally began a regularly scheduled public meeting at 9:00 a.m., recited the Pledge of Allegiance, and then immediately recessed the board meeting and began a public meeting of the SWMD. When the SWMD meeting adjourned, the board immediately reconvened its public meeting regarding non-SWMD county business. This entire process was open to the public. The board's clerk kept separate minutes for the two meetings.

**{¶ 6}** In 2019, the board adopted a consent-agenda procedure, which was used for the meetings at issue in this case. The procedure allowed for board approval of "routine items" as defined in the consent-agenda rules. Under these rules, a board member's "yes" vote on the consent agenda was a "yes" vote on each of the items included on the consent agenda.

**{¶ 7}** In practice, the consent agenda and documents relating to it would be distributed to the members of the board. Board members would not discuss consent-agenda items in private, and individual board members could request that an item be removed from a consent agenda. At a meeting, there would be no discussion of consent-agenda items; a roll-call vote would be taken concerning the items. However, the meeting minutes would contain the full text of the resolutions, reports, or recommendations that were adopted as part of the consent agenda. Therefore, according to the board's evidence in the record, consent-agenda items were not known to the public before a meeting; the first time the public would learn what had been adopted in a consent agenda was when the minutes became available.

**{¶ 8}** On September 17, 2019, the board began its meeting at 9:00 a.m. and recessed at 9:01 a.m. to begin the SWMD meeting. At the SWMD meeting, there was a consent agenda containing (1) an approval of minutes from the previous meeting and (2) three resolutions for approval. The board adopted the consent agenda and adjourned without conducting any other SWMD business.

**{¶ 9}** The September 26, 2019 meetings were conducted similarly. The board recessed its county meeting at 9:00 a.m. and immediately convened the SWMD meeting. At the SWMD meeting, there was a consent agenda containing an approval of minutes from the September 17 meeting and three resolutions for approval. The board adopted the consent agenda. After concluding its action on one regular-agenda item, the board adjourned the SWMD meeting at 9:02 a.m. and immediately resumed its meeting on non-SWMD county business.

**{¶ 10}** On December 26, 2019, Ames submitted a public-records request for "the meeting minutes of September 17 and September 26, 2019 for the Portage County Board of Commissioners and the Portage County Solid Waste Management District Board of Commissioners." The following day, the board's clerk emailed the minutes to Ames. The minutes for the September 17 meeting reflect the adoption of Resolution No. 19-137, which the board approved as part of the consent agenda, and the language of the resolution indicates that an "Exhibit A" was attached. *See State ex rel. Myers v. Meyers*, 169 Ohio St.3d 536, 2022-Ohio-1915, 207 N.E.3d 579, ¶ 37 (indicating that a document can be incorporated by reference in a public record). The exhibit, however, was not attached to the minutes that had been approved by the board or produced in response to Ames's public-records request.

*B.* Ames I

**{¶ 11}** On December 27, 2019, Ames filed a petition for writs of mandamus in the court of appeals against the board, the SWMD, and the Portage County Court of Common Pleas. Ames alleged that the SWMD was a "fictitious body" that "ha[d] no basis in law" and that the board violated the Open Meetings Act by conducting SWMD business during recesses of the September 17 and September 26 board meetings. Ames further alleged that the SWMD's use of a consent agenda violated the Open Meetings Act and that the failure to provide full and accurate minutes in response to his public-records request violated the Open Meetings Act

4

and the Public Records Act. Ames sought (1) a judgment finding that the board had violated the Open Meetings Act, (2) a writ of mandamus compelling the board to prepare, file, and maintain accurate minutes for the September 2019 meetings and all future meetings and ordering all SWMD business to be conducted in open meetings except for properly called executive sessions, (3) a writ of mandamus compelling the court of common pleas to perform the acts set forth in R.C. 121.22(I), namely issuing an injunction to compel compliance with the Open Meetings Act, and (4) an award of costs and attorney fees under R.C. 2731.11 and 149.43(C). Ames also alleged an entitlement to statutory damages under R.C. 149.43(C)(2).

{¶ 12} The Eleventh District granted the board summary judgment and denied Ames's petition for writs of mandamus. 11th Dist. Portage No. 2019-P-0125, 2020-Ohio-4359, ¶ 16-17. The court of appeals held that the SWMD "is a valid public body authorized to conduct business with regard to implementing a solid waste management plan that complies with R.C. 3734.55," *id.* at ¶ 11, and that its meeting minutes satisfied the requirements of R.C. 121.22(C), *id.* at ¶ 14. The court further concluded that the Open Meetings Act did not prohibit the use of consent agendas. Finally, the court found nothing actionable in the alleged omission of exhibit A from the September 17 minutes. The court did not address Ames's claim for relief under the Public Records Act or his claim against the court of common pleas.

{¶ 13} On Ames's appeal, we affirmed the court of appeals' judgment in part and reversed it in part. We agreed with the court of appeals that neither the Open Meetings Act nor R.C. 343.01, which authorized the creation of the SWMD, prohibited the board from holding a public meeting of the SWMD separate and apart from the board's meeting. *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, at ¶ 15. But we further held that "the court of appeals erred in finding, as a matter of law, that the use of a consent agenda in the manner described [by the

parties] did not violate the Open Meetings Act." We also explained that although the Open Meetings Act "does not appear to prevent the board from using consent agendas as a general matter," Ames had raised "a plausible theory—sufficient to survive a motion for summary judgment—that the board's use of a consent agenda * * * constructively closes its public meetings and is an impermissible end run around the Open Meetings Act." *Id.* at ¶ 19. We directed the court of appeals to consider whether the board's alleged violation of the Open Meetings Act entitled Ames to further relief.

{¶ 14} We also reversed the court of appeals' judgment pertaining to Ames's mandamus claim seeking the production of "full and accurate minutes" of the September 17 and 26 meetings. The minutes of the September 17 meeting "expressly incorporate[d] an 'Exhibit A' that the board * * * admitted [it had] not included in the approved minutes and was not produced to Ames in response to his public-records request." *Id.* at ¶ 23. We explained that "the uncontroverted evidence shows that the board did not produce full and accurate minutes of the September 17 SWMD meeting in response to Ames's public-records request." *Id.* at ¶ 24. We ordered the board to "produce Exhibit A to the minutes of the September 17 SWMD meeting to Ames in response to his public-records request," and we remanded the case to the court of appeals with orders "to consider * * * whether Ames should be awarded statutory damages under the Public Records Act." *Id.* at ¶ 28.

*C. Proceedings on Remand*

{¶ 15} On remand, the court of appeals issued an alternative writ and ordered the parties to file supplemental briefs. Following the parties' submissions, the court of appeals again granted summary judgment in favor of the board and the SWMD.

{¶ 16} As to whether Ames was entitled to further relief under the Open Meetings Act, the court of appeals denied the writ. To the extent that Ames was

seeking to compel the board's general compliance with the Open Meetings Act in the future, the court determined that he was not entitled to that relief. 11th Dist. Portage No. 2019-P-0125, 2022-Ohio-336, ¶ 43, citing *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 27 ("*ACLU*"), and *State ex rel. Kirk v. Burcham*, 82 Ohio St.3d 407, 409, 696 N.E.2d 582 (1998) (a writ of mandamus will not lie to compel general observance of laws in the future). And to the extent that Ames was seeking to prohibit the board from using a consent agenda for SWMD business, the court of appeals noted that the board had already stopped using a consent agenda for SWMD business. *Id.* at ¶ 44. For this conclusion, the court of appeals relied on affidavits from two board members, who each averred that the board had discontinued its use of the consent-agenda procedure. *Id.*

{¶ 17} The court of appeals also determined that Ames was not entitled to statutory damages. Although we had determined in *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, that the board violated the Public Records Act by failing to produce exhibit A, the court of appeals concluded that "Ames is not entitled to statutory damages under the Public Records Act because he has not established that respondents failed to comply with an obligation imposed by R.C. 149.43(B)." 2022-Ohio-336, ¶ 4. That is, contrary to our prior decision in this case, the Eleventh District determined that Ames had not proved that the board violated the Public Records Act. In fact, the court of appeals interpreted our decision in *Ames I* as holding that the board's failure to prepare full and accurate minutes of the September 17 meeting did *not* violate R.C. 149.43(B). 2022-Ohio-336 at ¶ 49-54.

{¶ 18} Ames appealed to this court as of right.

## II. Standard of Review

{¶ 19} This court reviews de novo a court of appeals' grant of summary judgment in a mandamus action. *State ex rel. Manley v. Walsh*, 142 Ohio St.3d

384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 17. Summary judgment is proper when an examination of all the relevant materials that have been filed in the action reveal that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). To obtain a writ of mandamus, Ames had to establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of appellee to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *See ACLU*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, at ¶ 22.

### III. The Open Meetings Act Claim

*A. The Court of Appeals' Decision Is Consistent with the Remand Order*

{¶ 20} Ames argues that the court of appeals failed to comply with this court's mandate when it granted the board and the SWMD summary judgment on his Open Meetings Act claim. Because we reversed the court of appeals' prior grant of summary judgment on Ames's mandamus claim against the board and the SWMD, Ames argues that this court's "decision that the [board and the SWMD were] not entitled to summary judgment became the law of the case." But *Ames I* did not go as far as Ames argues it did.

{¶ 21} The law-of-the-case doctrine provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). However, " '[t]he doctrine of law of the case comes into play only with respect to issues previously determined.' " *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 16, quoting *Quern v. Jordan*, 440 U.S. 332, 347, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), fn. 18. And " '[w]hile a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues.' " *Id.*, quoting *Sprague v. Ticonic Natl. Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

{¶ 22} To understand the scope of this court's remand order, we look first to the relief that Ames requested in his complaint. Ames sought a writ of mandamus commanding the board to (1) "prepare, file, and maintain full and accurate minutes for its meetings of September 17, 2019, September 26, 2019 and future meetings" and (2) "conduct all business of [the SWMD] in open meetings of the [board], except for properly called executive sessions." And in *Ames I*, we directed the court of appeals on remand to determine whether the board's alleged violation of the Open Meetings Act—the use of a consent agenda—entitled Ames to further relief beyond the board's production of exhibit A to Ames. *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, at ¶ 28.

{¶ 23} We reversed the court of appeals' determination that the board's use of a consent agenda did not violate the Open Meetings Act as a matter of law. *Id.* at ¶ 19. But that decision did not foreclose the possibility that the board could prevail on Ames's mandamus claim. Ames is incorrect when he says it is the law of the case that the board is not entitled to summary judgment.

{¶ 24} Ames also cites the language in *Ames I* ordering the court of appeals "to consider * * * whether the [board's] alleged violation of the Open Meetings Act entitles Ames *to further relief*" (emphasis added), *Ames I* at ¶ 28. The "further relief" language, according to Ames, means that this court already decided that the board was not entitled to judgment in its favor and the only question on remand was the relief to which he was entitled.

{¶ 25} As with his law-of-the-case argument, Ames's further-relief argument misinterprets *Ames I*. By "further relief," we meant that the court of appeals was to consider whether Ames was entitled to relief in addition to what we had already ordered, i.e., that the board produce exhibit A to the minutes of the September 17 meeting. With respect to Ames's request for a writ of mandamus ordering the board to comply with the Open Meetings Act, we held only that he had raised a genuine issue of fact "sufficient to survive a motion for summary

judgment," *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, at ¶ 19. We did *not* hold that Ames had proved that the board violated the Open Meetings Act by using a consent agenda in the September 17 and 26, 2019 meetings, much less that he was entitled to a writ of mandamus as a remedy for any violation. *See id.*

### B. Is Ames Entitled to a Writ of Mandamus on His Open Meetings Act Claim?

{¶ 26} Ames also argues that the court of appeals erroneously evaded the issue whether the board's use of a consent agenda violated the Open Meetings Act. The court of appeals determined that to the extent that Ames sought "to compel the board's general compliance with the [Open Meetings Act] in the future," a writ of mandamus would not issue. 2022-Ohio-336 at ¶ 43. And to the extent Ames sought to "prohibit the board from using a consent agenda for SWMD business," because the board discontinued its use of the consent-agenda procedure, the court of appeals observed that "that act ha[d] already been performed." *Id.* at ¶ 44. Therefore, the court of appeals held that Ames had not established a clear legal right or a clear legal duty that would entitle him to a writ of mandamus. *Id.* at ¶ 45; *see also State ex rel. Carlton v. Heekin*, 165 Ohio St.3d 248, 2021-Ohio-2822, 177 N.E.3d 275, ¶ 3 (performance of the requested act renders mandamus action moot).

### 1. Compelling General Observance of the Open Meetings Act in the Future

{¶ 27} In challenging the court of appeals' reasoning, Ames cites *State ex rel. Long v. Cardington Village Council*, 92 Ohio St.3d 54, 748 N.E.2d 58 (2001). In *Long*, the relator claimed that a village council had violated R.C. 121.22 because its minutes for numerous meetings were inadequate and incorrect. *Id.* at 55. The relator also claimed that the council had failed to state with requisite specificity the reasons for convening closed executive sessions. *Id.* She requested a writ of mandamus to compel the respondents "to prepare, file, and maintain full and accurate minutes for all meetings and to conduct all meetings in public except for properly called executive sessions." *Id.* at 56.

{¶ 28} We granted the relator's requested relief. We held that (1) the written minutes challenged by relator did not provide a "full and accurate record" of council proceedings, because they contained numerous inaccuracies and inadequate detail, (2) the meetings of committees composed of council members were meetings of a public body that were subject to the Open Meetings Act and the minutes of those meetings were inadequate, and (3) the council's minutes failed to specify the appropriate statutory purpose before conducting executive sessions. *Id.* at 57-59. Based on these conclusions, we held that the relator had "established her entitlement to the requested extraordinary relief in mandamus," and we granted the requested writ "to compel [the] respondents to prepare, file, and maintain full and accurate minutes and to conduct all meetings in public, except for properly called executive sessions." *Id.* at 61, citing *State ex rel. Inskeep v. Staten*, 74 Ohio St.3d 676, 678, 660 N.E.2d 1207 (1996) (granting writ of mandamus "ordering [the] respondents to open all council meetings to the public, as required by" a city charter).

{¶ 29} Ames argues that he is requesting the same relief that this court granted in *Long* and that in requesting such relief, he has used the same language that this court used in *Long*. Ames therefore contends that the court of appeals erred in determining that he was not entitled to relief compelling general compliance with the Open Meetings Act in the future.

{¶ 30} With respect to Ames's request for a writ compelling the board to prepare, file, and maintain full and accurate minutes for *all future meetings*, the court of appeals correctly denied the writ. We have denied similar relief in mandamus, characterizing it as a request to compel the general observance of laws. *See State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 135, 684 N.E.2d 1222 (1997), fn. 1 (denying writ seeking an order compelling a board to keep minutes and records in accordance with R.C. 305.10 and directing the board to permit the public to inspect and copy those records). And

in *Long*, 92 Ohio St.3d 54, 748 N.E.2d 58, upon which Ames principally relies, this court did not order the respondents to generally comply with the Open Meetings Act in the future with regard to the preparation, filing, and maintenance of full and accurate meeting minutes. This court's writ of mandamus compelled the respondents in that case to prepare, file, and maintain full and accurate minutes for the meetings that were at issue.

{¶ 31} As to a writ of mandamus compelling the preparation, filing, and maintenance of accurate minutes for the September 17 and 26, 2019 meetings, we have already awarded relief in one respect. *See Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, at ¶ 22-24, 28 (ordering the board to produce exhibit A to the September 17 SWMD meeting minutes). Indeed, this court ordered no further relief in mandamus with respect to these meetings and Ames does not argue that he is entitled to further relief as to these meetings. Stated another way, Ames has not shown that the board should be further compelled to prepare, file, and maintain accurate minutes of the September 17 and September 26 meetings.

### 2. *Challenge to the Use of the Consent Agenda*

{¶ 32} The court of appeals also denied further relief to Ames on the ground that the board is no longer using a consent agenda. As noted earlier in this opinion, evidence in the record indicates that the board discontinued its consent-agenda procedure and has not utilized a consent agenda since 2019.

{¶ 33} Ames does not cite case law to undermine the court of appeals' treatment of this issue. In cases in which this court granted a writ of mandamus ordering a public body to comply with the Open Meeting Act, it has been in the context of an ongoing failure of the public body to open its meetings to the public. *See Long*, 92 Ohio St.3d at 59, 61, 748 N.E.2d 58 (ordering the respondents to conduct all meetings in public except properly called executive sessions; evidence reflected that the respondents had often failed to properly specify the purpose for conducting closed executive sessions); *Inskeep*, 74 Ohio St.3d at 676, 678, 660

N.E.2d 1207 (ordering the respondents to open all meetings to the public; evidence showed that the respondents had routinely been adjourning public meetings to conduct unauthorized closed executive sessions). Ames argues, however, that the court of appeals' finding that the consent-agenda issue is now essentially moot is flawed because there is nothing "that would prevent [the board] or any future board of commissioners from again using a consent agenda in the same manner." He therefore asks this court to hold that "a public body violates the Open Meetings Act when it takes official action by voting to approve a consent agenda without informing the public of the resolutions being voted on."

{¶ 34} Ames's arguments show that he is not seeking a writ of mandamus to compel the board to open its meetings to the public but is instead seeking a declaration that the consent-agenda procedure violated the Open Meetings Act and an injunction to prohibit the board from using it prospectively. Actions for a declaratory judgment and a prohibitory injunction, however, are not within a court of appeals' original jurisdiction. *State ex rel. Ministerial Day Care Assn. v. Zelman*, 100 Ohio St.3d 347, 2003-Ohio-6447, 800 N.E.2d 21, ¶ 22; *State ex rel. Forsyth v. Brigner*, 86 Ohio St.3d 71, 72, 711 N.E.2d 684 (1999).

{¶ 35} Even if we did not agree that Ames's mandamus claim is moot or that his claim is a disguised action for declaratory and injunctive relief, his mandamus claim would still fail. We acknowledge that there is authority to support the assertion that a public body violates the Open Meetings Act when the manner in which it conducts official business runs counter to the purpose of the statute. *See*, *e.g.*, *State ex rel. MORE Bratenahl v. Bratenahl*, 157 Ohio St.3d 309, 2019-Ohio-3233, 136 N.E.3d 447, ¶ 20-21 (a public body may not take an official action by secret ballot of its members, even if the balloting was done at an open meeting and the ballot slips were maintained as public records); *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, 60 N.E.2d 1234, ¶ 15, 24-25 (a public body may not discuss public business in private, prearranged discussions that are later ratified at

a public meeting); *Manogg v. Stickle*, 5th Dist. Licking No. 97 CA 104, 1998 WL 516311, *2, 4 (Apr. 8, 1998) (a public body violates the Open Meetings Act when its members conceal their deliberations at a public meeting by communicating in whispers and secretly passing notes), cited with approval in *MORE Bratenahl* at ¶ 16. But these were not mandamus cases. They all originated in courts of common pleas as actions for declaratory and/or injunctive relief. *See White* at ¶ 4-6; *MORE Bratenahl* at ¶ 4; *Manogg* at *1-2. They do not stand for the proposition that Ames may enjoin the use of a consent agenda through a mandamus action.

**{¶ 36}** Because the relief Ames seeks is not cognizable in mandamus, the court of appeals on remand properly granted summary judgment to the board.

### IV. The Public Records Act Claim

**{¶ 37}** The second issue to be determined on remand was whether Ames was entitled to recover statutory damages under the Public Records Act. *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, at ¶ 28. R.C. 149.43(C)(2) provides:

> If a requester transmits a written request by hand delivery, electronic submission, or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requester shall be entitled to recover the amount of statutory damages set forth in this division *if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with [R.C. 149.43(B)].*
>
> The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office

or person responsible for the requested public records failed to comply with an obligation in accordance with [R.C. 149.43(B)], beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars.

(Emphasis added.) There is no dispute that Ames transmitted a public-records request to the board by email on December 26, 2019. Further, we ordered the board in *Ames I* to produce exhibit A, a document that was not provided to Ames in response to his request because it was not maintained in the board's records. In doing this, we necessarily determined that the board had violated R.C. 149.43(B)(2), which requires a public-records custodian to "organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with [R.C. 149.43(B)]." The court of appeals, however, denied statutory damages on the basis that there was no predicate violation of R.C. 149.43(B) upon which to base a statutory-damages award. 2022-Ohio-336 at ¶ 50.

{¶ 38} We have explained that "[an inferior] court is without authority to extend or vary the mandate issued by a superior court." *Giancola*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, at ¶ 16. "[W]here at a rehearing following remand [an inferior] court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." *Nolan*, 11 Ohio St.3d at 3, 462 N.E.2d 410. "[A]bsent extraordinary circumstances, such as an intervening decision by this court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Id.* at 5.

{¶ 39} Our mandate in *Ames I*, directed the court of appeals to determine whether statutory damages should be awarded. That mandate did not permit the court of appeals to reopen the question whether the board had violated the Public

Records Act. The court of appeals therefore failed to comply with our mandate, and reversal of its judgment is required "to preserve the structure of superior and inferior courts as designed by the Ohio Constitution," *Nolan* at 3.

{¶ 40} We note, however, that statutory damages are not necessarily available any time a public-records custodian violates R.C. 149.43(B)(2) by failing to organize and maintain public records in a manner that records can be made available for inspection or copying. The General Assembly did not empower the courts to award statutory damages based solely on the failure to properly organize and maintain public records.

{¶ 41} Statutory damages may be awarded when a records custodian fails to comply with an obligation imposed by R.C. 149.43(B). R.C. 149.43(C)(2). But only a person who is *aggrieved* by a violation of the Public Records Act may bring a mandamus action against the records custodian, R.C. 149.43(C)(1), and " '[a]ggrieved' is commonly defined as 'having legal rights that are adversely affected; having been harmed by an infringement of legal rights,' " *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 18, quoting *Black's Law Dictionary* 77 (9th Ed.2009). A person is aggrieved by a custodian's failure to organize and maintain records only if that failure prevents the custodian from producing a public record. R.C. 149.43(C)(2) drives this point home by expressly providing that the injury compensated by statutory damages is the "lost use" of the information in the requested public record. Statutory damages, then, are intended to remedy the injury caused by the public-records custodian's failure to timely produce the public records requested.

{¶ 42} The failure to organize and maintain records is not actionable by itself. Standing alone, that violation will not support an award of statutory damages. It is the failure to timely produce a public record that triggers an award of statutory damages. Here, the board failed to produce exhibit A in response to Ames's public-records request, and for that reason, statutory damages may be

available to him. Therefore, the court of appeals on remand must determine whether statutory damages are available to Ames under R.C. 149.43(C)(2) for his loss of use of the information in the requested public record.

{¶ 43} So while we recognize that the law-of-the-case doctrine is not a limit on a court's power and does not prevent a court from revisiting a prior decision that is clearly wrong, *Agostini v. Felton*, 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), this court's decision in *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, remanding this matter to the court of appeals to determine whether statutory damages are available to Ames was not clearly wrong. The General Assembly has broadly provided in R.C. 149.43(C) that statutory damages may be available when a public-records custodian has failed to comply with an obligation imposed by R.C. 149.43(B), and R.C. 149.43(B)(2) obligates a public-records custodian to organize and maintain public records so that they are available for inspection or copying. Although the General Assembly has cabined the right to statutory damages by limiting "compensation for injury arising from lost use of the requested information," R.C. 149.43(C)(2), to those who are aggrieved by the failure to produce the record, R.C. 149.43(C)(1), that does not mean that this court was clearly wrong when it determined that statutory damages may be available to Ames in this case. And because that determination was not clearly wrong, this court will abide by the law of the case remanding this matter to the court of appeals to determine in the first instance whether statutory damages are in fact available.

{¶ 44} Ames is entitled to an award of statutory damages unless circumstances justify a reduction of the award pursuant to R.C. 149.43(C)(2)(a) and (b). Those provisions authorize a court to reduce an award of statutory damages if it finds (1) that "a well-informed public office * * * reasonably would believe that the conduct * * * that allegedly constitutes a failure to comply with an obligation"

imposed by R.C. 149.43(B) "did not constitute a failure to comply with an obligation * * * based on the ordinary application of statutory law and case law as it existed at the time of the conduct," R.C. 149.43(C)(2)(a), and (2) that "a well-informed public office * * * reasonably would believe that [its] conduct * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b). These provisions require that the board's "conduct" in violating R.C. 149.43(B)(2) "had a reasonable basis in legal authority and public policy," *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 163 Ohio St.3d 304, 2021-Ohio-1176, 170 N.E.3d 19, ¶ 28.

**{¶ 45}** Because the court of appeals denied statutory damages on the erroneous basis that there was no violation of R.C. 149.43(B), neither the parties nor the court of appeals has had the opportunity to evaluate whether R.C. 149.43(C)(2) warrants a reduction or elimination of statutory damages that would otherwise be payable to Ames. We leave it to the court of appeals to determine in the first instance the amount of statutory damages that Ames should be awarded and to consider whether statutory damages should be reduced or eliminated under R.C. 149.43(C)(2).

### V. Conclusion

**{¶ 46}** For the foregoing reasons, we affirm the Eleventh District Court of Appeals' grant of summary judgment on Ames's Open Meetings Act claim, reverse its grant of summary judgment on his Public Records Act claim, and remand this matter to the court of appeals to determine whether Ames is entitled to statutory damages for the failure of the board to comply with his public-records request.

Judgment affirmed in part
and reversed in part
and cause remanded.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

18

DEWINE, J., concurs in judgment only in part and dissents in part, with an opinion joined by FISCHER and DETERS, JJ.

_____

**DEWINE, J., concurring in judgment only in part and dissenting in part.**

{¶ 47} "Boom. Gotcha." Today, the majority makes public-records requests a gotcha game. And it does so without any basis in law.

{¶ 48} Brian Ames asked for copies of some meeting minutes of the board of the Portage County Solid Waste Management District. A clerk emailed Ames the minutes the next day, inviting him to let her know if he needed anything else. But a one-page exhibit to the minutes was not included with the clerk's email, apparently because the exhibit hadn't been attached to the official minutes approved by the board. Rather than pick up the phone and ask for the missing exhibit, Ames filed a lawsuit within hours of receiving the clerk's response.

{¶ 49} The majority blesses Ames's conduct, reversing the court of appeals' determination that Ames was not entitled to statutory damages under Ohio's Public Records Act, R.C. 149.43. I would not. Nothing in the Public Records Act allows for damages in this situation. And the majority's decision has the perverse effect of encouraging parties to rush to the courthouse any time a page is inadvertently left out of a public-records response, instead of simply letting the public office know that it made a mistake. So, I dissent from that portion of the majority's judgment.

## I. A Missing Exhibit

{¶ 50} The underlying lawsuit centers on the waste-management board's use of consent agendas to conduct public business. The meetings at issue in this case took place in September 2019. During those meetings, the waste-management board convened, adopted the consent agenda, and quickly adjourned. The consent agendas contained an approval of minutes from the previous meeting and various

19

resolutions. There was no other business conducted at the meetings, and the board did not publicly discuss the items contained in the consent agendas.

{¶ 51} On December 26, 2019, Ames requested certified copies of the minutes from the board's September 17 and 26 meetings. The board's clerk emailed the minutes to Ames the next day, telling him: "If you need anything further, please let me know." At the September 17 meeting, the board had passed a resolution approving a "Then and Now Certification" from the county auditor, which verified that sufficient funds had been appropriated for payments due under certain county contracts. The minutes from that meeting contain the full text of the resolution, which specifies the total amount certified by the county auditor and indicates that the auditor's certificate was attached to the resolution as exhibit A. But the auditor's certificate was not included as part of the minutes approved by the board. Consequently, when the clerk sent Ames a copy of the minutes that had been approved, the certificate was not produced.

{¶ 52} Ames filed a mandamus action against the waste-management board. His claims were primarily focused on the board's use of the consent agenda, which he maintained constructively closed the meetings to the public and thus violated Ohio's Open Meetings Act, R.C. 121.22. He additionally challenged the accuracy of the minutes approved by the board for the September 17 meeting, noting that the text of the resolution in the minutes referred to exhibit A, but the exhibit had not been attached to the minutes. He asserted that this amounted to a violation of the Open Meetings Act as well as the Public Records Act, *see* R.C. 149.43.

{¶ 53} In *State ex rel. Ames v. Portage Cty. Bd. of Commrs*., 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492 ("*Ames I*"), this court determined that "the board did not produce full and accurate minutes of the September 17 [waste-management] meeting in response to Ames's public-records request," *id.* at ¶ 24. We therefore concluded that the Eleventh District Court of Appeals had "erred in

20

granting summary judgment on Ames's mandamus claim as it relates to the minutes of that meeting." *Id.* In short, Ames was entitled to a copy of the missing exhibit, and we ordered the board to produce it. *Id.* at ¶ 28. We then remanded the case to the court of appeals for it to determine "whether Ames should be awarded statutory damages under the Public Records Act." *Id.*

**{¶ 54}** On remand, the court of appeals found that Ames had failed to establish a violation of the Public Records Act. In keeping with this court's holding that the board had not produced "full and accurate minutes" of the September 17 meeting, the court of appeals reasoned:

> [T]here is no evidence suggesting that the "manner" in which the board organized and maintained its meeting minutes was faulty pursuant to R.C. 149.43(B)(2) [of the Public Records Act]. * * *
>
> Rather, the evidence establishes that the board failed to *prepare* full and accurate meetings for the September 17 meeting by neglecting to attach a referenced exhibit. As a result, the September 17 minutes the board approved and produced to Mr. Ames were necessarily not full and accurate. The fact that the minutes the board produced to Mr. Ames contained an inaccuracy does not constitute a failure to comply with R.C. 149.43(B).

(Emphasis in original.) 11th Dist. Portage No. 2019-P-0125, 2022-Ohio-336, ¶ 53, 54.

**{¶ 55}** The majority disagrees with that analysis, insisting that by granting the relief that we did in *Ames I*, "we necessarily determined that the board had violated R.C. 149.43(B)(2)" of the Public Records Act. Majority opinion, ¶ 37. It thus concludes that the court of appeals erred in finding that the board did not violate the Public Records Act.

## II. Three Problems

{¶ 56} There are three problems with the majority's decision. First, it renders Ames eligible to recover statutory damages under the Public Records Act even though Ames has failed to establish that the board violated any duty under that act. Second, it misreads our mandate to the court of appeals and misapplies the law-of-the-case doctrine. Third, it encourages gamesmanship and unnecessary litigation.

### A. Ames has failed to show a violation of the Public Records Act

{¶ 57} Ohio's Open Meetings Act, R.C. 121.22, mandates "the preparation, filing, and maintenance of a public body's minutes." *State ex rel. Long v. Cardington Village Council*, 92 Ohio St.3d 54, 56, 748 N.E.2d 58 (2001). "Once these minutes are prepared, Ohio's Public Records Act, R.C. 149.43, requires the public body to permit public access to the minutes upon request." *Id*. This court has observed that public bodies have a duty to "maintain a full and accurate record of their proceedings." *White v. Clinton Cty. Bd. of Commrs*., 76 Ohio St.3d 416, 667 N.E.2d 1223 (1996), paragraph one of the syllabus. But that does not mean that a person is entitled to damages under the Public Records Act every time a public body fails to adhere to the minutes requirement of the Open Meetings Act.

{¶ 58} The Public Records Act imposes obligations on public offices and their records custodians to (1) organize and maintain records so that they are available for public inspection, R.C. 149.43(B)(2), (2) provide records in response to public-records requests, R.C. 149.43(B)(1) and (B)(7), and (3) give an explanation for any denial of a public-records request, R.C. 149.43(B)(3). A requester is eligible for an award of statutory damages "if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with [R.C. 149.43(B)]." R.C. 149.43(C)(2). Ames alleges, and the majority agrees, that by failing to attach exhibit A to the meeting minutes, the waste-management board violated a duty under the Public Records

Act. But when we try to pin down exactly what duty the board violated, things get a little fuzzy.

{¶ 59} The majority says that in *Ames I* we "necessarily determined" that the board violated R.C. 149.43(B)(2) of the Public Records Act. That provision requires a public office to "organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with [the Public Records Act]." The problem is that this court never mentioned any deficiency in the manner in which the board organized its records for public inspection in *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492. We didn't even cite R.C. 149.43(B)(2) in that decision. To the contrary, our holding in *Ames I* was explicitly premised on the board's failure "to maintain a full and accurate record of its proceedings," *id*. at ¶ 23. We concluded that the official minutes from the September 17 meeting of the waste-management board were inaccurate because those minutes referenced an exhibit that had not been attached. *Id*. at ¶ 22. Those conclusions refer to duties that are imposed by the Open Meetings Act. *See* R.C. 122.22(C); *White* at 423.

{¶ 60} Of course, Ames's claim for damages is premised not on the Open Meetings Act,[1] but on the Public Records Act. Determined to locate some violation of the public-records law, the majority now says—for the first time—that the board failed in its obligation to maintain records for public inspection because exhibit A "was not maintained in the board's records," majority opinion at ¶ 37. I'm not convinced that's true. The clerk's affidavit says that had Ames told her about the omission, she "would have and could have retrieved the exhibit A * * * and provided it to him." It goes on to note that "[t]he auditor's office *also* maintains

---

1. A party may recover damages in the form of a civil forfeiture under the Open Meetings Act when a court of common pleas issues an injunction based on a violation of the Open Meetings Act. R.C. 121.22(I)(2)(a). Because this case was not filed in the common pleas court and no injunction has been issued, that provision is inapplicable.

this record." (Emphasis added.) Nothing in her affidavit compels the conclusion that the exhibit was not maintained by the board.

{¶ 61} But even if that were the case, it still doesn't amount to a failure in the clerk's response to Ames's public-records request. Ames requested a certified copy of the board's September 17 meeting minutes, and that's what he got. The board produced the responsive record the very next day. The issue is simply that the minutes themselves contained an omission: when the board approved the minutes, exhibit A was not attached. In other words, the exhibit was not made a part of the minutes approved by the board.

{¶ 62} Inaccuracies in the record of a public body's proceedings might in some instances amount to a violation of the Open Meetings Act. *See White*, 76 Ohio St.3d at 424, 667 N.E.2d 1223. But nothing in statute converts these defects into a violation of the Public Records Act simply because a public body produces the record in response to a public-records request. In this case, the law required disclosure of the minutes approved by the waste-management board. But it did not require the records custodian to comb through the minutes to review their content.

{¶ 63} Admittedly, this court has not always been clear in differentiating between the Open Meetings Act and the Public Records Act. *See, e.g.*, *Long*, 92 Ohio St.3d 54, 748 N.E.2d 58; *White*. And our decision in *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, could have done a better job of distinguishing the distinct duties that arise under the two enactments. But there is no reason to double down. There is no basis to award damages under the Public Records Act for what might be a violation of the Open Meetings Act.

*B. The court of appeals did not disregard our mandate in* Ames I*,*
*and even if it had, the law-of-the-case doctrine*
*does not preclude us from deciding this case correctly*

{¶ 64} The majority doesn't seriously argue with any of the above. Instead, its view seems to be that (1) we conclusively determined that the board violated the

Public Records Act in *Ames I*, (2) the court of appeals disregarded our mandate in *Ames I* by concluding that there was no Public Records Act violation, and (3) because our purported determination in *Ames I* that there was a violation of the Public Records Act was not "clearly wrong," majority opinion at ¶ 43, the law-of-the-case doctrine prohibits us from revisiting that determination.  I disagree with all three propositions.

{¶ 65} In my view, a plain reading of our decision in *Ames I* left open the question whether the board had violated the Public Records Act, and, therefore the court of appeals did not violate our mandate.  But if one adopts a contrary view, and reads *Ames I* as finding a violation of the Public Records Act, nothing in the law-of-the-case doctrine precludes us from revisiting that decision.

{¶ 66} The majority reads *Ames I*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, as having conclusively determined that the board violated the Public Records Act and opines that the purpose of our remand order was to determine whether Ames was entitled to statutory damages.  That's certainly not the way I read *Ames I*.  While the majority now states that in *Ames I* "we had determined" that "the board violated the Public Records Act," majority opinion at ¶ 17, there is no statement to that effect in *Ames I*.  What the majority calls a "determination" is simply its own inference—one that I cannot make, and that the court of appeals did not make.

{¶ 67} To the contrary, our mandate was "to consider * * * whether Ames should be awarded statutory damages under the Public Records Act."  *Ames I* at ¶ 28.  On remand, the court of appeals did exactly what we asked: it considered whether Ames was entitled to statutory damages under the Public Records Act and determined that he was not.  2022-Ohio-336 at ¶ 4.

{¶ 68} The majority reads our directive "to consider * * * whether Ames should be awarded statutory damages under the Public Records Act," *Ames I* at ¶ 28, as directing the court of appeals to only consider whether damages should be

reduced. But the plain language of our mandate also left the court of appeals with the option of determining that Ames was not entitled to damages at all because there was no violation of the Public Records Act. And, since *Ames I* identified only violations of duties under the Open Meetings Act, not the Public Records Act, the court of appeals was on solid ground with its holding.

{¶ 69} For the same reasons that the court of appeals did not violate our mandate, it is not the law of the case that the board violated the Public Records Act. *See* Wright & Miller, *Federal Practice and Procedure*, Law of the Case, Section 4478 (3d Ed.) ("Law of the case [doctrine] does not reach a matter that was not decided"). But suppose *Ames I* did hold that the board violated the Public Records Act. Even then, the doctrine wouldn't bind our hands. *See Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15 (The law-of-the-case doctrine is "a rule of practice, not a binding rule of substantive law"). The doctrine doesn't prevent us from reconsidering our erroneous prior judgment in this case. That's because the law-of-the-case doctrine "directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). Indeed, it would make little sense to say that this court has the authority to overrule its prior precedent, *see State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 5, and the authority to reconsider its own decisions, *see* S.Ct.Prac.R. 18.02, but somehow lacks the authority to correct an obvious error it made at an earlier stage in a case.

{¶ 70} The majority's view is that the law-of-the-case doctrine prevents us from correcting an erroneous decision unless that decision was "clearly wrong," majority opinion at ¶ 43. I will leave to others the distinction between a decision that is "clearly wrong" and one that is only wrong. But by any measure, if we had held in *Ames I* that the board violated a duty under the Public Records Act, such a decision would have been clearly wrong.

26

**{¶ 71}** The majority's theory is that the board violated the Public Records Act by not maintaining public records so they are available for inspection and copying. Majority opinion at ¶ 37. But there is no dispute that the board maintained the minutes of the meeting and that the board produced the official minutes to Ames; the problem was that the minutes themselves were incomplete because an exhibit was missing. As explained above, *supra* Part II.A., not preparing accurate meeting minutes might be a violation of the Open Meetings Act, but it is not a violation of the Public Records Act.

**{¶ 72}** The problems with the majority's resolution of this case come into even sharper focus when one looks at its new remand order. The majority now says that on remand the court is to determine whether the board is entitled to a reduction in the amount of damages it must pay. A court may only reduce an award of statutory damages if it finds that a well-informed public office would have reasonably believed, based on the law at the time, that its conduct did not amount to a violation of the Public Records Act, R.C. 149.43(C)(2)(a), and that its conduct served the public policy underlying the legal authority it relied on, R.C. 149.43(C)(2)(b).

**{¶ 73}** The trouble is that this provision presumes that the public office made a deliberate choice not to turn over the requested record. That didn't happen here. The clerk intended to provide a complete response to Ames's request; the "denial" in this case was simply the result of a clerical error.

**{¶ 74}** The remand order thus leaves the court of appeals with some unanswerable questions on remand. Would a well-informed public office have reasonably believed that its denial of a public-records request was legally proper even though the office never meant to deny the request in the first place? *See* R.C. 149.43(C)(2)(a). If so, does the office's denial serve the "public policy" that the office relied upon in failing to produce the minutes, even though the office didn't rely on public policy at all? *See* R.C. 149.43(C)(2)(b).

**{¶ 75}** Quite simply, the Public Records Act's damage-reduction factors are inapplicable to the facts of this case because this case does not involve a Public Records Act violation. The majority leaves the court of appeals with a square peg and a round hole.

### C. The gotcha game

**{¶ 76}** The majority not only sows confusion about the meaning of the Public Records Act, but it also incentivizes litigiousness and gamesmanship, and creates perverse incentives for future litigants.

**{¶ 77}** Consider, for instance, an employee who receives a public-records request and promptly responds by scanning the documents and emailing them to the requester. It turns out that two pages got stuck together, and as a result, one of the pages was not scanned. Under the logic of the majority opinion, the requester would be better off filing a mandamus action to recover statutory damages than simply picking up the phone or replying to the email to let the employee know about the missing page. Indeed, that is exactly what happened here. Rather than take the clerk up on her invitation to "let her know" if he needed anything else, Ames filed this mandamus action within hours of receiving the documents, noting in his complaint that exhibit A was not attached.

**{¶ 78}** A public office unquestionably has a duty to respond promptly and thoroughly to public-records requests. At the same time, though, "[a] public-records requester has an obligation to cooperate with the public-records custodian fulfilling a request, including an obligation to inform the public agency when she feels that a request has been incomplete or slow." *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 565, 2015-Ohio-4914, 45 N.E.3d 981, ¶ 25. This court's decision today turns public-records compliance into a gotcha game, where every missing page becomes grounds for a lawsuit.

28

### III.  Conclusion

{¶ 79} The waste-management board maintained the minutes of its meetings and made them available to the public.  And it promptly responded to Ames's request for the September 17 minutes by sending him a copy of the minutes approved by the board.  That the exhibit in question was not made a part of the board's official minutes does not amount to a violation of a duty imposed by the Public Records Act.  I therefore dissent from the court's judgment holding that Ames is eligible for an award of statutory damages and remanding the case to the court of appeals to consider whether there is a basis to reduce the damages award.

{¶ 80} I concur in the majority's judgment that Ames's claim regarding the consent-agenda procedure is moot.  I would therefore affirm the judgment of the court of appeals in full.

FISCHER and DETERS, JJ., concur in the foregoing opinion.

_____

Brian M. Ames, pro se.

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Christopher J. Meduri, Assistant Prosecuting Attorney, for appellee.

_____