[Cite as *State ex rel. Bowling v. DeWine*, 2025-Ohio-2313.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Candy Bowling et al, | : | |
| | : | |
| Plaintiffs-Appellees, | | No. 25AP-191 |
| | : | (C.P.C. No. 21CV-4469) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Michael DeWine, in his official capacity as Governor of the State of Ohio et al., | : | |
| | | |
| Defendants-Appellants. | : | |
| State ex rel. James Parker et al., | : | |
| | : | |
| Plaintiffs-Appellees, | | No. 25AP-192 |
| | : | (C.P.C. No. 21CV-5524) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Michael DeWine, in his official capacity as Governor of the State of Ohio et al., | : | |
| | | |
| Defendants-Appellants. | : | |
| Sebastian Nash et al., | : | |
| | | |
| Plaintiffs-Appellees, | : | |
| | : | No. 25AP-193 |
| v. | | (C.P.C. No. 21CV-5525) |
| | : | |
| Michael DeWine, in his official capacity as Governor of the State of Ohio et al., | : | (REGULAR CALENDAR) |
| | | |
| Defendants-Appellants. | : | |
| | : | |

D E C I S I O N

Rendered on June 30, 2025

**On brief:** *DannLaw*, *Marc E. Dann*, *Brian D. Flick*, and *Andrew M. Engel*; *Zimmerman Law Offices*, *P.C.*, and *Thomas A. Zimmerman, Jr.*, for appellees. **Argued:** *Marc E. Dann.*

**On brief:** *Dave Yost*, Attorney General, *Julie M. Pfeiffer*, *Ann Yackshaw*, *Gregory A. Rustico*, and *Theresa R. Dirisamer*, for appellants.  **Argued:** *Ann Yackshaw*.

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1}   Defendants-appellants, Ohio Governor Michael DeWine and Director of Ohio Department of Job and Family Services Matt Damschroder (collectively "Governor DeWine"), appeal from the judgment of the Franklin County Court of Common Pleas ruling in favor of plaintiffs-appellees, Candy Bowling, James Parker, and Sebastian Nash (collectively "Bowling").  The trial court ordered Governor DeWine to take all action necessary to rescind his early termination of Ohio's participation in the Federal Pandemic Unemployment Compensation ("FPUC") program, 15 U.S.C. 9023, and to obtain the benefits that would have been paid to Ohio citizens from June 26 to September 6, 2021.  For the reasons that follow, we affirm the judgment of the trial court.

## I.  Facts and Procedural History

{¶ 2}   The FPUC program was one of several provisions in the federal Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which went into effect on March 27, 2020.  *See* Pub.L. No. 116-136, 134 Stat. 281, codified at 15 U.S.C. 9001-9141.  The State of Ohio and the U.S. Secretary of Labor entered into an agreement in which the Ohio Department of Job and Family Services ("ODJFS") committed to receiving CARES Act funds, including FPUC funds, and administering them in the ways required by federal statute.  The agreement provided that the State of Ohio could terminate any portion of its agreement at any time with 30 days' notice.  Governor DeWine was the signatory for the State of Ohio.

{¶ 3}   The FPUC program provided eligible unemployed Ohioans with an extra $600 in unemployment benefits per week from March to July of 2020, which was reduced to an extra $300 per week from July 2020 to September 2021.  Pub.L. No. 116-36, § 2104(b)(1)(B); Pub.L. No. 116-260, Div.N, Title II, Subtitle A, Ch.1, Subch. I, § 203, 134 Stat. 1182.  On May 24, 2021, Governor DeWine notified the U.S. Department of Labor, in writing, that Ohio would terminate its participation in the FPUC portion of the agreement effective June 26, 2021.

{¶ 4}   On July 16, 2021, Bowling filed an action for declaratory judgment, injunctive relief, and mandamus, along with a motion for a temporary restraining order and preliminary

injunction to stop Governor DeWine from prematurely terminating the FPUC benefits available to unemployed Ohioans. Bowling argued that, by taking this action, Governor DeWine violated R.C. 4141.43(I), which requires ODJFS to "cooperate" with the federal government "to secure . . . all advantages available" under the unemployment-compensation provisions of the Social Security Act, as well as the Federal-State Extended Unemployment Compensation Act of 1970 ("EUCA"), 26 U.S.C. 3301 to 3311, and other federal acts related to unemployment.

{¶ 5}   The trial court held a hearing on Bowling's motion for a temporary restraining order and preliminary injunction, at which Bowling had the burden of proving that (1) she had a substantial likelihood of success on the merits, (2) she would suffer irreparable injury absent an injunction, (3) the injunction would not unjustifiably harm third parties, and (4) the injunction would serve the public interest. *See Corbett v. Ohio Bldg. Auth.*, 86 Ohio App.3d 44, 49 (10th Dist. 1993). The trial court found that while Bowling had proven that she would suffer irreparable injury absent an injunction, she had not proven that she was likely to succeed on the merits because R.C. 4141.43(I) did not apply to the CARES Act provisions. The trial court did not address the remaining two factors as its decision was dispositive of Bowling's motion, rendering them moot. Accordingly, the trial court denied Bowling's motion.

{¶ 6}   Bowling appealed, and this court granted her motion for expedited review. On August 24, 2021, this court reversed the trial court's judgment, holding that Bowling had proven that she had a substantial likelihood of success on the merits of her actions. *State ex rel. Bowling v. DeWine*, 2021-Ohio-2902 (10th Dist.) ("*Bowling I*"). *Bowling I* held that the CARES Act benefits, as a whole, were administered through the framework of the Social Security Act, and the FPUC program qualified as a type of extended compensation under the EUCA. *Id.* at ¶ 46-47. As both the Social Security Act and EUCA are listed in R.C. 4141.43(I), this court concluded that FPUC was contemplated by R.C. 4141.43(I). *Id.* This court further held that the governor's general authority to enter into agreements with other states or the federal government did not override the legislature's authority to govern the acceptance and use of federal funds, including unemployment benefits. *Id.* at ¶ 54. We remanded the matter to the trial court to complete the previously mooted portions of its analysis and to proceed accordingly. *Id.* at ¶ 60.

{¶ 7}   The dissenting opinion to *Bowling I* contended that there was no final, appealable order involved in Bowling's interlocutory appeal, rendering the appellate court without jurisdiction to address the merits of the appeal. *Id.* at ¶ 63-64. The dissent pointed out that Governor DeWine had already terminated Ohio's FPUC benefits by the time Bowling filed her complaint, leaving nothing to enjoin. *Id.*

{¶ 8}   Governor DeWine appealed this court's decision to the Supreme Court of Ohio on August 26, 2021. On the same day, Bowling filed an emergency motion for relief from the stay of proceedings at the trial court, noting that the period for the payment of FPUC benefits was set to end on September 6, 2021. The Supreme Court denied the motion for relief, *08/31/2021 Case Announcements No. 5*, 2021-Ohio-3015, accepted discretionary jurisdiction over the appeal, *11/09/2021 Case Announcements*, 2021-Ohio-3938, and denied Bowling's subsequent motion for expedited briefing and argument, *12/22/2021 Case Announcements*, 2021-Ohio-4409. On November 22, 2022, the Supreme Court issued the following one-sentence decision: "This cause is dismissed, sua sponte, as moot." *State ex rel. Bowling v. DeWine*, 2022-Ohio-4122, ¶ 1.

{¶ 9}   Governor DeWine then filed a motion for reconsideration, asking the Supreme Court to add the following language to its decision: "The Tenth District's judgment is vacated and the case is remanded with instructions to dismiss the case as moot." (Nov. 23, 2022 Mot. for Recons. at 1-2.) The Supreme Court summarily denied the motion. *12/27/2022 Case Announcements*, 2022-Ohio-4617.

{¶ 10} After further proceedings on remand, the trial court granted Bowling's motion for leave to file an amended consolidated class action complaint and denied Governor DeWine's motion to dismiss. In denying Governor DeWine's motion, the trial court rejected the argument that the underlying causes of action contained in the complaint were mooted by the September 2021 end date of the FPUC program. The trial court noted that it remains possible that the "funds allocated as FPUC benefits remain in the general treasury" and that "Ohio can retroactively reinstate its participation in the FPUC program such that it can collect its share of any remaining benefits and distribute the same to eligible parties." (Mar. 12, 2024 Order & Entry at 14.) The trial court also rejected Governor DeWine's argument that the controversy was rendered moot by the Supreme Court's November 2022 dismissal of the previous interlocutory appeal:

> This Court has spent an inordinate amount of time attempting to decipher the Supreme Court of Ohio's one sentence decision's impact on this case. Does it mean the entire controversy between the parties is moot as defendants would suggest? Or was the Court only addressing the specific preliminary injunctive relief plaintiffs were seeking in their original complaint? Perhaps the court was purposefully ambiguous in order to provide this Court with some flexibility. If that was not the case, this Court expects any court of appeals reviewing this decision will let it know.
>
> In light of this ambiguity, this Court adopts the more conservative application founded in Ohio's well-established policy of deciding cases on their merits. . . . Consequently, the Court finds that the Supreme Court of Ohio's decision relates solely to the specific preliminary injunctive relief sought in plaintiffs' original complaints in which plaintiffs sought a court order enjoining the State of Ohio from *prematurely* terminating participation in the FPUC program. Because the consolidated class action complaint seeks alternate relief, the claims raised therein are not moot. And defendants' arguments for dismissal on such grounds are not well-taken.

(Internal citations omitted.) (Emphasis in original.) *Id*. at 15.

{¶ 11} Both parties ultimately filed cross-motions for summary judgment. In its February 12, 2025 decision on the motions, the trial court noted that the parties submitted the same evidentiary support for their opposing motions, namely the July 12, 2024 "declaration of Jim Garner," the Administrator of the office of Unemployment Insurance, Employment and Training Administration, of the United States Department of Labor. (Feb. 12, 2025 Order & Entry at 5.) The declaration related to an email from Garner to various states, including Ohio, sent on September 3, 2021. The 2021 email provided:

> Hi everyone:
>
> Some states have reached out to the Department because they are reconsidering termination of one or more of the CARES Act UI programs, either voluntarily or in response to a court order. If your state is reconsidering its termination of one or more CARES Act programs, please reach out to the Department as soon as possible to discuss the options that may be available to ensure that any changes are made prior to October 6, which is 30 days after the CARES Act programs expire and the last day on which claimants may submit new PUA applications (with limited exceptions as per Section 4.c. and Attachment II to UTPL No. 16-20, Change 6).

The Department will consider a request to rescind that is submitted in writing and signed by the Governor or their appointed designee. Should the Department agree to having a termination notice be rescinded, the state will need to continue to accept applications and issue payments as if there had been no effective termination. Further, following an accepted rescission, all weeks of unemployment after the earlier termination will be covered under the state's previously signed implementing agreement and all administrative and benefit costs will be federally funded.

We understand there may be additional considerations when a state is responding to a court order and we're happy to discuss those on a case-by-case basis.

If a state does re-institute one or more CARES Act programs, the state will be expected to individually notify the individuals who were previously eligible for these programs at the time of the earlier termination. Additionally, the state must have a process in place to obtain the retroactive continued claims (including weekly self-certifications for individuals receiving PUA). Finally, the state will be expected to comply with the provisions identified in UIPL No. 14-21, Change 1, based on the program expiration date and not the state's rescinded termination date.

Please reach out if additional discussion would be helpful.

Sincerely,

Jim
Jim Garner, Administrator

*Id.* at 6-7.

**{¶ 12}** In his July 2024 declaration, Garner stated that the 2021 email "continues to represent the position of the Department." *Id.* at 6. Garner emphasized that his previous correspondence "explains that if a state's termination recission [sic] is accepted by the Department, the Department would cover all benefits and administrative costs." *Id.* He noted that the Department's willingness to have case-by-case discussions about court-ordered rescissions of CARES Act terminations "remains true even if the court order is issued after October 6, 2021." *Id.*

**{¶ 13}** In light of the foregoing declaration, the trial court concluded that it was still possible for Ohio to rescind its early termination of participation in the FPUC program and to request the federal benefits that remained available under the program, which Bowling

estimates could result in the payment of up to $900 million in additional benefits to eligible Ohioans. And based on the law of the case established in *Bowling I*, the trial court concluded that R.C. 4141.43(I) required Governor DeWine to secure any funds available under the FPUC program for Ohio citizens. The trial court held that Bowling's second mandamus claim, which demanded the prompt payment of any FPUC benefits received, was premature because Governor Dewine was not yet in possession of those benefits. Accordingly, the trial court granted Bowling's motion for summary judgment in part and ordered Governor DeWine to take all action necessary to reinstate Ohio's participation in the FPUC program from June to September of 2021 and take all actions necessary to obtain Ohio's share of the benefits for that period.

{¶ 14} Governor DeWine appealed the trial court's judgment and filed a motion to stay execution of its decision, which the trial court granted. Bowling filed a motion for injunction with this court, asking us to lift the stay pending appeal and to order Governor DeWine to move forward with reinstating Ohio's participation in the FPUC program. Pursuant to the discussion below, we affirm the judgment of the trial court, we remand the matter for execution of the judgment, and we deny the motion for injunction as moot.

## II. Assignments of Error

{¶ 15} Governor DeWine assigns the following two assignments of error for our review:

> [I.] The trial court erred in deciding the merits of claims that the Supreme Court of Ohio had declared moot in lieu of dismissing the claims for lack of subject matter jurisdiction.

> [II.] The trial court erred in granting Plaintiffs-Appellees' motion for summary judgment and denying Defendants-Appellants' motion for summary judgment because it erroneously determined that a state statute required the State of Ohio to accept federal pandemic funds.

## III. Discussion

{¶ 16} In his first assignment of error, Governor DeWine asserts that the trial court should have dismissed Bowling's entire case as moot. The issue of mootness is a question of law, which we review de novo. *Hunter v. Shield*, 2018-Ohio-2371, ¶ 40 (10th Dist.). Governor DeWine asserts that the Supreme Court of Ohio already determined that the case was moot in *Bowling I*, rendering it the law of the case. Additionally, he asserts that the case is moot because it is unlikely that the FPUC funds are still available. We disagree on both points.

{¶ 17} It has long been held that when a reviewing court decides a case on appeal, "whatever was before [the] court, and disposed of by its decree, is considered as finally settled." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895); *see also State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2023-Ohio-3382, ¶ 21, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984) (" 'the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels' "). Inferior courts are bound by the superior court's decree, and cannot question, vary, or extend the superior court's mandate. *Id.* However, " ' "[w]hile a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." ' " *Ames* at ¶ 21, quoting *Giancola v. Azem*, 2018-Ohio-1694, ¶ 16, quoting *Sprague v. Ticonic Natl. Bank*, 307 U.S. 161, 168 (1939). When a claim is not at issue on appeal, we cannot infer from a simple mandate that the superior court disposed of that claim unless it was "necessarily implied" in the previous proceedings. *Sprague* at 168.

{¶ 18} The scope of Bowling's 2021 appeal to this court was limited to the trial court's judgment on the motions for a temporary restraining order and preliminary injunction. Our 2021 decision in *Bowling I* addressed a portion of the merits regarding those motions, and our legal analysis became the law of the case that the trial court was obligated to follow. The appeal to the Supreme Court of Ohio was also limited to a portion of the merits of Bowling's motions for a temporary restraining order and preliminary injunction. Bowling's underlying claims for mandamus and declaratory and injunctive relief were not before the court. When the Supreme Court issued its decision on *Bowling I*, it did not address the merits of our decision, let alone the merits of underlying claims that were not at issue in the interlocutory appeal. The court simply dismissed the appeal as moot.

{¶ 19} A dismissal based on mootness is not a judgment on the merits. *See Crestmont Cleveland Partnership v. Ohio Dept. of Health*, 139 Ohio App.3d 928, 933-934 (10th Dist. 2000). Instead, a dismissal based on mootness indicates that the court cannot determine the merits of the case because the case does not present a justiciable controversy. *See C.T.F. v. A.B.M.*, 2024-Ohio-1998, ¶ 35 (10th Dist.); *Lund v. Portsmouth Local Air Agency*, 2014-Ohio-2741, ¶ 6 (10th Dist.). Accordingly, the Supreme Court's dismissal of *Bowling I* as moot resolved only one issue: whether Bowling's motions for a temporary restraining order and preliminary injunction presented a justiciable controversy at the time of its decision.

{¶ 20} As the trial court explained below, we could draw any number of *possible* inferences from the Supreme Court's dismissal. There also might be *no* inference to draw, as it is possible that the justices on the court were unable to reach a majority vote on any one specific reason for dismissing the appeal as moot. Regardless, the dismissal did not *necessarily* imply that the trial court should reject this court's legal reasoning in *Bowling I*, nor did it necessarily imply that Bowling's underlying claims for mandamus and equitable relief were moot.

{¶ 21} If the Supreme Court had wanted to provide legal reasoning that necessarily implied the mootness of the entire case, or if it had wanted to issue a mandate for the trial court to dismiss the entire case on remand, it could have done so. Given Governor DeWine's express request for the court to provide such a mandate or reasoning, *12/27/2022 Case Announcements,* 2022-Ohio-4617, we conclude that the Supreme Court's failure to so provide was intentional rather than inadvertent. Accordingly, the Supreme Court's dismissal of the interlocutory appeal in *Bowling I* did not require the trial court to grant Governor DeWine's motion to dismiss the entire case as moot.

{¶ 22} Next, Governor DeWine asserts that this case is moot because it is not "substantially likely" that Bowling's injuries are still redressable. (Brief of Governor DeWine at 22.) We disagree that substantial likelihood of redressability is the appropriate standard for a determination of mootness. A matter is "moot only when it becomes impossible for a tribunal to grant meaningful relief." *Joys v. Univ. of Toledo*, 1997 Ohio App. LEXIS 1765, *7 (10th Dist. Apr. 29, 1997). *See also State ex rel. Weaver v. Lake Cty. Bd. of Commrs.*, 62 Ohio St.3d 204, 207 (1991) ("For a matter to be considered moot, relief in the case must be impossible to grant."). Conversely, if it is possible for a litigant to obtain relief on a claim, the matter is not moot. *See Joys* at *7-8; *Weaver* at 207-208.

{¶ 23} Governor DeWine provides various reasons as to why it is unlikely that Bowling will ever recover the FPUC funds, but none of those reasons establish that recovery is impossible. Under the proper standard of possibility rather than substantial likelihood of recovery, Bowling's action is not moot. Accordingly, we reject Governor DeWine's first assignment of error.

{¶ 24} In his second assignment of error, Governor DeWine contests the trial court's decision to grant summary judgment in Bowling's favor. We review the grant of summary

judgment de novo. *State ex rel. Stone v. Norman*, 2024-Ohio-263, ¶ 8 (10th Dist.). Governor DeWine argues that the trial court erred when it concluded, pursuant to this court's reasoning in *Bowling I*, that R.C. 4141.48(I) required the State of Ohio to secure any available benefits under the federal CARES Act, including FPUC funds. Despite his insistence that the Supreme Court's mootness holding in *Bowling I* should be treated as the law of the case, Governor DeWine nonetheless asserts that this court's legal conclusions in *Bowling I* should not be treated as the law of the case because this court addressed only the motions for a temporary restraining order and preliminary injunction and not the claims for declaratory relief and for a permanent injunction. We find these conflicting arguments unpersuasive.

{¶ 25} Governor DeWine is correct that when a trial court rules on matters like preliminary injunctions, the trial court's decision is usually tentative and may change after the parties are able to fully develop the record. *See Howe v. Akron*, 801 F.3d 718, 740 (6th Cir. 2015). However, if an appellate court "considering the preliminary injunction has issued '[a] fully considered appellate ruling on an issue of law,' then that opinion becomes the law of the case." *Id.*, quoting 18B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters*, § 4478 (4th Ed. 2015). This court provided a fully considered ruling on the meaning of R.C. 4141.48(I) as a matter of law in *Bowling I* when we held that "FPUC is one of the 'available advantages' described in R.C. 4141.43(I) that the General Assembly requires [Governor Dewine] 'secure' to the citizens of the State of Ohio." *Bowling I* at ¶ 47. Because the Supreme Court did not address or disturb that holding, it remains the law of the case.

{¶ 26} The law of the case doctrine requires that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan*, 11 Ohio St.3d at *3. "[T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.* In the trial court's decision granting summary judgment in Bowling's favor, it noted its disagreement with this court's analysis in *Bowling I* regarding the meaning of R.C. 4141.48(I), but the trial court diligently upheld its duty to apply the law of the case. We are also obligated to remain consistent with the law of the case in this matter as "[i]nconsistency is the antithesis of the rule of law." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393

(D.C.Cir. 1996). Irrespective of how this panel might have ruled in the original appeal, we must apply the law of the case rather than treat this appeal as an untimely motion for reconsideration. Accordingly, we reject Governor DeWine's second assignment of error.

## IV. Disposition

{¶ 27} For the foregoing reasons, we overrule Governor DeWine's two assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas. Pursuant to App.R. 27 and R.C. 2505.39, we remand this matter to the trial court for execution. We deny as moot Bowling's motion for injunction to lift the trial court's stay pending appeal.

*Judgment affirmed;*
*motion for injunction denied as moot;*
*cause remanded.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

———————————